**FILED**

United States District Court
Albuquerque, New Mexico

Mitchell R. Elfers
Clerk of Court

AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
### for the
### District of New Mexico

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*
Gray Apple iPhone in clear case with unknown IMEI and
black Samsung cell phone with IMEI 355069170284513
currently in the possession of the FBI

)
)
)
)
)
)

Case No.  **24mr1587**

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A, incorporated by reference.

located in the _____ District of _____ New Mexico _____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B, incorporated by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2119; | Carjacking; |
| 18 U.S.C. § 922(j); | Possession of a Stolen Firearm; |
| 18 U.S.C. § 924(c); | Use of a Firearm in the Commission of a Crime of Violence; |
| 21 U.S.C. § 841 | Possession with Intent to Distribute Controlled Substances |

The application is based on these facts:

See attached affidavit.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days;* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's  signature*

Sarah Rich, Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
telephone _____ *(specify reliable electronic means).*

Date:  August 27, 2024                    _____
*Judge's signature*

City and state:  Albuquerque, New Mexico        Kirtan Khalsa United States Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE GRAY APPLE IPHONE IN CLEAR CASE WITH UNKNOWN IMEI AND BLACK SAMSUNG CELL PHONE WITH IMEI 355069170284513 CURRENTLY IN THE POSSESSION OF THE FEDERAL BUREAU OF INVESTIGATION. | Case. No. _____<br><br><br>**Filed Under Seal** |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Sarah Rich, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.       I make this affidavit in support of an application under Rule 41 of the Federal

Rules of Criminal Procedure for a warrant authorizing the search of a gray Apple iPhone in a

clear plastic case with unknown IMEI and a black Samsung cell phone with IMEI

355069170284513 (the SUBJECT DEVICES) currently in the possession of the Federal Bureau

of Investigation in the District of New Mexico, further described in Attachment A for the things

described in Attachment B.

2.       I am a Special Agent with the Federal Bureau of Investigation (FBI) and have

been since November 2014. While employed by the FBI, I have investigated federal criminal

violations related to carjackings, kidnappings, homicides, assaults, firearms violations, armed

robberies, terrorism, and cybercrime. I have gained experience through training and everyday

work relating to these types of investigations. Moreover, I am a federal law enforcement officer

who is engaged in enforcing federal criminal laws, and I am authorized by the Attorney General

to request a search warrant.

3.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, law enforcement officers, FBI employees, and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 2119–Carjacking, 18 U.S.C. § 924(c)–Use of a firearm in the commission of a crime of violence, 18 U.S.C. § 922(j)–Possession of a stolen firearm, 21 U.S.C. § 841–Possession with intent to distribute controlled substances, and 18 U.S.C. 924(c) –Use of a firearm in the commission of a drug trafficking crime were committed, and that evidence of these violations may be found within the SUBJECT DEVICES.

## PROBABLE CAUSE

5.      On January 23, 2024, at approximately 10:05AM, Albuquerque Police Department (APD) personnel were dispatched to 2740 Wyoming Blvd NE, Albuquerque, NM 87111 in regards to a carjacking at gunpoint. Victim V.E. (hereinafter "Jane Doe") reported that she arrived at the location at approximately 10:00AM and exited her vehicle, described as a 2023 Buick Envision bearing New Mexico license plate DM12SQ. As she exited, Jane Doe was grabbed by an unidentified Hispanic male (UNSUB) wearing a black sweatshirt and black pants. Jane Doe observed the UNSUB holding a black and silver handgun in his right hand. Jane Doe began to run away from the UNSUB; however, she stopped and handed the UNSUB her purse due to fear of the UNSUB discharging the handgun. The UNSUB then told Jane Doe to hand over her car keys. Jane Doe informed the UNSUB her keys were in her purse. The UNSUB then entered Jane Doe's Buick Envision and left the parking lot. Jane Doe further described the

UNSUB as approximately 5'5" in height and approximately 30 years of age. Based on the information contained in this affidavit, Steven **ROBLES** (year of birth "YOB" 2005) is the primary suspect in this carjacking.

6.     Jane Doe was able to use an iPhone cell phone belonging to a bystander to track the location of Jane Doe's iPhone, which was inside her purse in the stolen Buick. Tracking of Jane Doe's iPhone led APD personnel to the area of the intersection of Shoshone Road and Eubank Boulevard, however, APD personnel were unable to locate the stolen Buick Envision at this location.

7.     The OnStar Corporation, a subsidiary of General Motors which provides subscription-based communications, in-vehicle security, emergency services, navigation and remote diagnostics for customers, contacted APD with information regarding the location of the stolen Buick Envision. OnStar identified the stolen vehicle as near the area of 2612 Florida St NE in Albuquerque, New Mexico. APD personnel responded to that location just before 10:45AM and positively identified the stolen Buick. APD also observed a Hispanic male in the driver seat of the car matching the description of the UNSUB. More specifically, the male was wearing a black hoodie and black/dark blue jeans.

8.     The UNSUB drove the Buick Envision to the corner of Florida St NE and Menaul Boulevard to a Discount Tire store. Approximately 30 minutes later the UNSUB left the Discount Tire store and drove the stolen Buick to the Coronado Mall, then proceeded to drive erratically through the Coronado Mall parking lots. APD personnel believed the UNSUB was casing the parking lots to carjack another vehicle due to the UNSUB's observed behaviors. APD personnel approached the UNSUB with their police vehicles after which the UNSUB attempted to flee police by crashing into police vehicles. After the UNSUB crashed his vehicle, APD

personnel gave verbal commands for the UNSUB to exit the vehicle. The UNSUB exited the stolen Buick Envision through the passenger side door and fled on foot, running east toward the mall entrance. APD personnel then utilized less lethal means as well as a canine unit to apprehend the UNSUB prior to him entering the mall.

9.      The UNSUB was subsequently identified by APD personnel as **ROBLES**. Jane Doe also completed a field identification and positively identified **ROBLES** as the UNSUB who had carjacked her at gunpoint approximately three hours prior.

10.      Jane Doe's mother, D.P., who is the owner of the stolen Buick Envision, was contacted by APD personnel and provided verbal consent for APD to search the vehicle. APD personnel collected evidence from the vehicle and the scene where **ROBLES** was apprehended. Items taken into evidence by APD included a black Glock GMBH pistol bearing serial number BWHS792, a Romarm/Cugir AK pistol bearing serial number DF-028519RO, an AR15-style rifle bearing serial number 2-090161, a red purse, and gray gloves. These firearms were not in the vehicle at the time of the carjacking and do not belong to Jane Doe or Jane Doe's mother. Surveillance camera footage was also collected from the Coronado Mall.

11.      **ROBLES** was arrested by APD and charged with Armed Robbery, Unlawful Taking of a Motor Vehicle, Littering, and Resisting/Evading/Obstructing an Officer. **ROBLES** was later released on state pre-trial release pending trial and resolution of the aforementioned charges.

12.      On July 6, 2024, subsequent to **ROBLES**'s pre-trial release, at approximately 12:47AM, APD personnel were conducting surveillance in the parking garage located at 1 Central NW in Albuquerque. APD personnel observed a green Honda sedan parked on the top floor of the parking garage bearing New Mexico license plate BBGM15. A Hispanic male later

determined to be **ROBLES** was identified as the driver. **ROBLES** was wearing a red top and had goatee-style facial hair. A second Hispanic male subject (UNSUB 1) with curly hair and a tattoo on the right side of his neck was identified as the passenger of the green Honda. **ROBLES** and UNSUB 1 were observed approaching a group that had gathered on the top floor of the garage. UNSUB 1 was observed arguing with a third unidentified male in the group (UNSUB 2). UNSUB 1 was observed returning to the green Honda, retrieving a black AR15-style rifle, and concealing the rifle in his pant leg. UNSUB 1 reapproached UNSUB 2 and they appeared to be arguing. UNSUB 1 exposed the rifle before concealing it again.

13.     APD personnel called for additional APD units to respond to the garage. Unknown persons were heard saying "cops" in the garage, and the group on the top floor of the garage began to get into their respective vehicles. **ROBLES** and UNSUB 1 returned to the green Honda and entered the vehicle, with **ROBLES** entering the driver seat. APD personnel issued commands for **ROBLES** and UNSUB 1 to stop the vehicle and exit. The green Honda was driven forward hitting several cars including a marked APD vehicle. APD personnel deployed a tire deflation device at the bottom exit of the parking garage. The green Honda fled from the parking garage, drove over the deflation device, and continued several blocks. The green Honda came to a stop near the intersection of 3rd Avenue and Gold Avenue in Albuquerque. **ROBLES** and UNSUB 1 were then observed fleeing on foot. APD personnel pursued **ROBLES** and UNSUB 1 and were able to take **ROBLES**, the driver of the green Honda, into custody near the intersection of 3rd Avenue and Lead Avenue. Both SUBJECT DEVICES were located on **ROBLES**'s person upon his apprehension by APD. **ROBLES** was again arrested by APD personnel and charged with Aggravated Fleeing of a Law Enforcement Officer and Resisting/Evading.

14.    At approximately 1:07AM, APD evidence collection personnel were dispatched to the intersection of 3rd Avenue and Gold Avenue. The green Honda was more fully identified as a 2003 Honda Accord bearing New Mexico license plate BBGM15 with VIN 1HGCM72613A023749. APD personnel photographed and obtained swabs and latent prints from the exterior of the Honda Accord, then the vehicle was sealed by APD personnel at approximately 1:55AM pending a search warrant.

15.    On July 10, 2024, at approximately 12:20PM, APD personnel executed a search warrant on the green Honda Accord. APD personnel collected evidence including a Palmetto State Armory PA-15 SBR rifle bearing serial number SCD198760 (this rifle was located in the backseat and is similar in appearance to the rifle held by UNSUB 1); a loaded Glock 19 firearm bearing serial number AHKP645 (located near the rear driver side door, behind where **ROBLES** was seated); and multiple rounds of ammunition to include .223 rounds. A black fanny pack was located on the driver side floorboard, underneath where **ROBLES** was sitting. The pack contained ammunition, a Glock magazine that would fit the seized Glock, approximately 32.5 grams of cocaine, a digital scale, and rubber gloves. A database records check by APD personnel confirmed the Glock 19 pistol bearing serial number AHKP645 was stolen. A test fire and check of the National Integrated Ballistic Information Network (NIBIN) also showed this Glock 19 pistol had been involved in a shooting incident where multiple casings were recovered, but no victim or suspect information was developed.

16.    Based on my training and experience, I am familiar with the methods and means used by individuals, drug trafficking organizations, and gang/criminal enterprises to purchase, transport, store, and distribute controlled substances and firearms. I have learned that these individuals often keep firearms in close proximity to themselves, their product and their

proceeds, to protect them from other drug traffickers and law enforcement. In addition, based on my training and experience, the presence of the large quantity of cocaine, the digital scale, and rubber gloves indicates an intent to sell and distribute the controlled substance.

17.     Based on my training and experience, I know that cellular devices, like the SUBJECT DEVICES, contain a significant amount of information that is potentially relevant to the investigation of criminal acts. This may include information tending to identify the operator of the devices, the historic physical location of the operator or the device, and/or the state of mind of the operator including messages and phone calls.

18.     Based on this, I have probable cause to believe the SUBJECT DEVICES will contain evidence of violations of 18 U.S.C. § 2119–Carjacking, 18 U.S.C. § 922(j) –Possession of a stolen firearm, 18 U.S.C. § 924(c) –Use of a firearm in the commission of a crime of violence, 21 U.S.C. § 841–Possession with intent to distribute controlled substances, and 18 U.S.C. § 924(c)–Use of a firearm in the commission of a drug trafficking crime.

## INTERSTATE NEXUS

19.     Jane Doe's vehicle, which was taken by force by **ROBLES**, is a Buick Envision. Based on my training and knowledge, the Buick Envision is manufactured in Yantai, China. Therefore, the vehicle traveled in, and affected, interstate commerce before **ROBLES** took it by force from Jane Doe on January 23, 2024.

20.     Also based on my training and knowledge, the Glock 19 pistol bearing serial number AHKP645 was manufactured in Glock production factories located in Austria, Slovakia, or Smyrna, Georgia in the United States. Therefore, the firearm traveled in, and affected, interstate commerce before it was in **ROBLES**'s possession on July 6, 2024.

## VIOLENT CRIMES AND ELECTRONIC DEVICES

21.     Based upon my training and experience, and on my consultation with other law enforcement officers experienced in investigations regarding violent offenses, including carjacking and firearms offenses, I have learned the following:

      a.     Consistent with most of the population, those who engage in violent offenses often carry electronic devices, to include cellular phones. Such electronic devices are often used to communicate with criminal associates through the telephone's standard capabilities to call and text, as well as through smartphone applications (apps) such as WhatsApp, Snapchat, Instagram, Pinger, Marco Polo and Facebook, which allow users to send and receive digital communications in various forms such as voice calls, text messages, image and video sharing, and live video conversations. Records of these communications, text messages, and contact lists are frequently retained and stored on those electronic devices and within those apps. Based upon my training, experience, and knowledge of this investigation, I believe that such evidence and information can be found on electronic devices.

      b.     Based on my training and experience, I know that cellular devices contain a significant amount of information that is potentially relevant to the investigation of criminal acts. This may include information tending to identify the operator of the devices, the historic physical location of the operator or the device, and/or the state of mind of the operator including messages and/or phone calls.

      c.     Individuals who commit violent offenses are known to flee from law enforcement or to take efforts to avoid apprehension.  Cellular devices can contain

evidence of the individual's record of travel, including data points such as location information, Internet searches, and messages.

d.     Electronic information can remain on computer storage media, such as within cellular phones, for an indefinite period of time. I am aware that even when a user attempts to delete records from computer storage media, the records may still exist and be recovered through computer forensic techniques.

e.     A subscriber identity module (SIM) card is a smart card approximately the size of a thumbnail that stores identification information and can pinpoint a cellphone to a specific location. The SIM card can store information about the network plan. A SIM card can be transferred from one device to another to utilize a user's service plan on different devices.

## DRUG TRAFFICKING AND CELLULAR DEVICES

22.     Based upon my training and experience, and on my consultation with other law enforcement officers experienced in investigations regarding conspiracy to manufacture, distribute and possess with intent to distribute controlled substances, I have learned the following:

a.     Those who possess illegal drugs for distribution often use electronic devices such as wireless or cellular telephones and smartphones. Such electronic devices are often used to communicate with coconspirators and customers through the telephone's standard capabilities to call and text, as well as through smartphone applications ("apps") such as WhatsApp, Snapchat, Pinger, Marco Polo and Facebook, which allow users to send and receive digital communications in various forms such as voice calls, text messages, image and video sharing, and live video conversations. Records of these communications, text messages, and contact lists are frequently retained

and stored on those electronic devices and within those apps. Based upon my training, experience, and knowledge of this investigation, I believe that such evidence and information is likely to be found in the Device.

       b.      Individuals involved in the illegal trafficking of controlled substances often maintain documents, records, and other evidence of their transactions in a manner similar to the record keeping procedures of legitimate businesses. Even after the drugs are sold, documentary records are often maintained for long periods of time, even years, to memorialize past transactions, the status of accounts receivable and accounts payable, and the names and telephone numbers of suppliers, customers and co-conspirators. These records may be maintained on paper, in the form of business and personal ledgers and diaries, calendars, memoranda, pay/owe sheets, IOUs, miscellaneous notes, money orders, customer lists and telephone address books. These records can reflect names, addresses and/or telephone numbers of associates and co-conspirators, the sale and purchase of controlled substances including precursors, customer lists and amounts of money owed to the trafficker by customers and by the trafficker to his/her suppliers. All such records can also be produced and/or stored on cellular telephones and evidence of these transactions is often contained within cellular phones.

       c.      Drug dealers often travel domestically and internationally to facilitate their trafficking. Evidence of foreign and domestic travel by persons engaged in illegal drug trafficking includes travel itineraries, airline tickets, hotel and gas receipts, and passports and visas and their contents. Many of these items are accessible via the internet and can be downloaded and saved on the computer or other media such as cellular phones.

d.      Drug trafficking is a crime that necessarily involves at least two people – a buyer and a seller. Prior to engaging in the drug transaction, the buyer and seller must communicate and discuss the type of drug to be sold, the quantity, the price, and the location where the sale will take place. I know that drug dealers and their customers make use of cellular phones and smartphones to conduct these necessary communications.

e.      Information stored in electronic form on cellular telephones can provide evidence of drug trafficking and the identity of associates. For example, numbers stored on cellular telephones (such as Caller ID lists reflecting recently received calls, speed dial lists of names and/or telephone numbers, and logs of outgoing and incoming calls) can provide evidence of who the drug dealer is calling, and thus the identity of associates.

f.      Drug dealers often take, or cause to be taken, photographs and/or videos of themselves, their associates, their property, drug trafficking records, records of financial transactions involving drug trafficking proceeds, their drugs, and firearms. They usually take these photographs and/or videos with their cellular phones and store them in those cellular phones.

g.      I know that those engaged in drug trafficking have access to, and utilize, numerous cellular telephones, often at the same time in an effort to avoid law enforcement monitoring.

h.      Electronic information can remain on computer storage media, such as within cellular phones, for an indefinite period of time. I am aware that even when a user attempts to delete records from computer storage media, the records may still exist and be recovered through computer forensic techniques.

## TECHNICAL TERMS

23.     Based on my training and experience, I use the following technical terms to convey the following meanings:

a.      Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system (GPS) technology for determining the location of the device.

b.      Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen

for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c.    Portable media player: A portable media player (or MP3 Player or iPod) is a handheld digital storage device designed primarily to store and play audio video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d.    GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The GPS consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude,
longitude, and sometimes altitude with a high level of precision.

e.    PDA: A personal digital assistant, or PDA, is a handheld electronic device

used for storing data (such as names, addresses, appointments, or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word9 processing documents, spreadsheets, and presentations. PDAs may also include GPS technology for determining the location of the device.

24.     Based on my training, experience, and research, I know that cell phones have capabilities that allow them to serve as wireless telephones, digital cameras, portable media players, GPS navigation devices, and PDAs. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

25.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

26.     *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how

the SUBJECT DEVICES were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the SUBJECT DEVICES because:

     a.    Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

     b.    Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

     c.    A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

     d.    The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

     e.    Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

27.    *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the SUBJECT DEVICES consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the SUBJECT DEVICES to human inspection in order to determine whether it is evidence described by the warrant.

28.    Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying storage media that reasonably appear to contain some or all of the evidence described in the warrant, and would authorize a later review of the media or information consistent with the warrant. The later review may require techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

## **CONCLUSION**

29.    Based on the above information, I believe there is probable cause that ROBLES violated 18 U.S.C. § 2119–Carjacking, 18 U.S.C. § 924(c)–Use of a firearm in the commission of a crime of violence, 18 U.S.C. § 922(j)–Possession of a stolen firearm, 21 U.S.C. § 841–Possession with intent to distribute controlled substances, and 18 U.S.C. § 924(c)–Use of firearm in commission of a drug trafficking crime and evidence of those violations may be found within the SUBJECT DEVICES, as more particularly described in Attachment A and to seize the items described in Attachment B.

30.    This affidavit has been reviewed and approved by Assistant United States Attorney Natasha Moghadam. I declare under penalty of perjury that the foregoing is true and

correct to the best of my knowledge.

Respectfully submitted,

Sarah Rich
Special Agent
Federal Bureau of Investigation

Sworn telephonically to me and signed electronically
on  August 27          , 2024:

HONORABLE KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE
ALBUQUERQUE, NEW MEXICO

## ATTACHMENT A

*Property to be searched*

This warrant is authorizing the search of a gray Apple iPhone in a clear plastic case with unknown IMEI and a black Samsung cell phone with IMEI 355069170284513 (the SUBJECT DEVICES), both currently in the possession of the Federal Bureau of Investigation in the District of New Mexico.

## ATTACHMENT B

*Property to be seized*

1.      All records relating to violations of 18 U.S.C. § 2119, 18 U.S.C. § 922(j), 18 U.S.C. § 924(c), and 21 U.S.C. § 841, for the time period of January 1, 2023, to July 6, 2024, that provide evidence of user attribution or evidence relating to the offenses described in this warrant, including, but not limited to:

  a.      Evidence of user attribution showing who used or owned the device at the time the things described in this warrant, including items that were created, edited, or deleted, such as communications, contacts, saved usernames and passwords, documents, and browsing history;

  b.      Online social media accounts;

  c.      Messages sent or received regarding the state of mind of the user;

  d.      Chats, emails, text messages, voicemails, direct messages, or other electronic communications, including communications between co-conspirators, customers, and suppliers;

  e.      Internet browser metadata including internet history, form autofill data, stored usernames and passwords, bookmarks, and cache files;

  f.      Geo-location records;

  g.      Photos and/or videos;

  h.      Records of installed programs or applications;

  i.      Account access information including logged IP addresses;

  j.      Any and all records of telecommunications services, including telephone billing records and internet subscriber records;

  k.      Data and information identifying co-conspirators, customers, and

suppliers;

       l.      data and information regarding the types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

       m.      data and information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

       n.      financial records or other information regarding the expenditure or disposition of proceeds from the distribution of controlled substances including all bank records, checks, credit card bills, account information, and other financial records; and

       o.      records of travel.

2.      As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

3.      This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.